**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DANIEL BLAZAVICH,**

        **Petitioner,**

    **vs.**

**ROBERT TAPIA,** *et al.*,

        **Respondents.**

**CASE NO. 2:06-CV-253**

**JUDGE JAMES L. GRAHAM**

**Magistrate Judge King**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the Petition for Writ of *Habeas Corpus* of Petitioner Daniel Blazevich ("*Petition*").  Doc. No. 2.  In the *Petition*, filed under 28 U.S.C. § 2241,  Petitioner challenges his continued supervision by the United States Parole Commission ("USPC"), alleging that he has served his sentence in its entirety and he was not accorded a parole revocation hearing for six and one-half months after his arrest by the USPC.  *Id.* at 3.  For the reasons set forth below, the *Petition* is **CONDITIONALLY GRANTED**.

**I.**    **FACTS**

Many of the facts of the case are undisputed.  However, the parties disagree in certain significant respects, which the Court will note in is recitation of the facts.

On August 29, 1988, the United States District Court for the Southern District of West Virginia sentenced Petitioner to nine years imprisonment followed by five years special parole.  *Petition*, at ¶ 2; Response to Petition for Writ of *Habeas Corpus* ("*Response*"), *Exhibit A*,[1] *Bureau*

_____

[1]All exhibits referred to herein are attached to the *Response*.  Doc. No 10.

*of Prisons Sentence Monitoring Computation Data*, at 5.

On October 27, 1993, Petitioner was paroled for the remainder of his original nine year sentence. *Petition*, ¶ 3; *Exhibit B*, *1993 Certificate of Parole*.  At that time, Petitioner had served 1885 days; 1340 days of the original nine year term of imprisonment remained, expected to end on June 28, 1997, when he would commence the five year term of special parole.  *Exhibit B*.  Petitioner takes the position, however, that, when he was paroled on October 27, 1993, he was paroled immediately to his five year term of special parole.  *Petition*, at 2 fn.1.

On October 13, 1995, Petitioner was arrested pursuant to a warrant for violations of parole arising out of his conviction on two counts of trafficking in drugs in Washington County, Ohio. *Exhibit A*, at 3.   At that time, Petitioner had served 716 days of the remaining 1340 days of his original nine year sentence.

On July 15, 1996, the USPC revoked Petitioner's parole and forfeited the 716 days that he had spent on parole pursuant to 18 U.S.C. § 4210(b)(2).  *Exhibit C*, *1996 Notice of Action*.  That forfeiture was effective based on 28 C.F.R. § 2.52(c)(2).[2]  That is, a parolee who has been convicted of a crime automatically forfeits the time previously spent on parole.  Petitioner, however, appears to contend that the 716 days were forfeited pursuant to the special parole statute, 21 U.S.C. § 841(c), and that he was not reparoled until April 2000.  *Petition*, at 2 fn.1.

Petitioner was reparoled on December 24, 1996, after he had served 16 months in prison. *Exhibit D*, *1996 Certificate of Parole*.  The Bureau of Prisons recomputed the expiration of Petitioner's original nine year sentence to June 13, 1999, *i.e.*, the date the warrant for violation of

---

[2]Petitioner does not challenge the USPC's interpretation of this statute.

2

parole was executed,[3] (October 13, 1995), plus the 1340 days remaining on the nine year sentence. *Exhibit A*, at 4.

On June 13, 1999, Petitioner successfully completed his nine year sentence while on parole and, on the following day, began his five year term of special parole, which was to expire on June 13, 2004. *Exhibit E, 1999 Certificate of Special Parole.*

On March 29, 2004, a warrant was issued charging Petitioner with violations of special parole, *Exhibit F, 2004 Warrant, i.e.*, use of drugs and violation of the special drug aftercare conditions, *Exhibit G, Warrant Application.* That warrant was executed on April 14, 2004, after Petitioner had completed 1766 days, or four years 10 months, of his five year term of special parole. *Exhibit A*, at 2.

On May 24, 2004, Petitioner accepted an expedited revocation proposal. *Exhibit H, Notice of Eligibility for Expedited Revocation Procedure*; 28 C.F.R. § 2.66. By Petitioner's acceptance of this offer, he accepted responsibility for his violations, waived his right to a revocation hearing, and consented to the sanction proposed by the USPC. *Exhibit H*, at 2.

On June 19, 2004, the USPC revoked Petitioner's special parole term, forfeiting the 1766 days he had spent on special parole pursuant to 21 U.S.C. § 841(c). *Exhibit I, Expedited Revocation Notice of Action*; *Exhibit A*, at 2. Thus, the Bureau of Prisons recomputed the expiration of Petitioner's five year term of special parole to April 13, 2009, *i.e.*, the date of execution of the warrant for violation of special parole, (April 14, 2004), plus the entire five year special parole term. *Exhibit A*, at 2.

_____

[3]It is not disputed that the proper date upon which to begin recalculation of the expiration of a sentence or a term of parole is the date of the execution of the warrant for violations of parole.

3

On October 14, 2004, Petitioner was released from prison for the third time. *Exhibit J, 2004 Certificate of Parole*.  Petitioner takes the position that he was released to traditional parole at this point; the government contends that Petitioner was released, for the second time, to special parole. *Id.*

On September 8, 2005, the USPC issued yet another warrant, *Exhibit K, 2005 Warrant*, charging Petitioner with violating conditions of special parole by using drugs, failing to yield at a stop sign and committing a theft offense, *Exhibit L, 2005 Warrant Application*.  On September 20, 2005, the warrant was executed.  *Exhibit M, Warrant Execution Documentation*.  At that time, Petitioner had served 524 days, or one year, five months and six days, on parole.

On October 12, 2005, the United States Probation Office conducted a preliminary interview to determine probable cause.  *Exhibit N, Summary Report of Preliminary Interview*.  On December 9, 2005, the USPC found probable cause to believe that Petitioner had violated the conditions of his special parole term.  *Exhibit O, Probable Cause Worksheet*, at 3.

The USPC scheduled Petitioner's revocation hearing for January 13, 2006.  *Exhibit P, E-Mail Correspondence*, at 2.  The USPC rescheduled the hearing after it was unsuccessful in contacting Petitioner's attorney concerning the hearing and after it was informed that Petitioner had retained a new attorney.  *Id.*

On March 14, 2006, the USPC notified Petitioner's newly retained attorney that the revocation hearing had been rescheduled for March 31, 2006.  *Exhibit Q, Scheduling Notes*.  On March 16, 2006, Petitioner's attorney contacted the USPC indicating that he would be unavailable on March 31, 2006, offering several alternative dates.  *Exhibit R, Facsimile Correspondence*.  The parties agreed on April 4, 2006, for the revocation hearing.

4

On April 4, 2006, a USPC hearing examiner conducted Petitioner's revocation hearing. *Exhibit S*, *Hearing Summary*.  Petitioner advised the hearing examiner that he believed that the USPC no longer had jurisdiction and that he had filed a petition for writ of *habeas corpus*.  *Id.* at 2. The hearing examiner nevertheless proceeded with the revocation hearing.  Petitioner admitted to the hearing examiner that he had used drugs and committed the traffic violation, but he denied committing the theft offense.  *Id.*  The hearing examiner recommended that the USPC find that Petitioner had violated his special parole term.  *Id.* at 4.

On April 25, 2006,[4] the USPC issued its decision to revoke Petitioner's special parole term and forfeit the 524 days Petitioner had spent on special parole pursuant to 21 U.S.C. § 841(c).  This decision would have the effect of extending Petitioners' special parole term to September 20, 2010, *i.e.*, the date the warrant for violation of parole was executed, (September 20, 2005), plus the entire five year special parole term.  *Exhibit U*, *2006 Notice of Action*.  The USPC set a presumptive reparole date of March 20, 2007, after Petitioner will have served yet another 18 months in prison. *Id.*  Although that decision was appealable through administrative processes, Petitioner did not pursue those remedies.

## II.  PROCEDURAL HISTORY

On April 6, 2006, the *Petition* was filed in this Court challenging under 28 U.S.C. § 2241 Petitioner's continued supervision by the USPC.  Doc. No. 2.

On April 19, 2006, Petitioner was transferred from this district to a facility in Youngstown, Ohio.  On that same day, the Court required Petitioner be maintained at the Youngstown facility for

---

[4]The government contends that this notice was issued to modify a notice of action previously issued by the USPC on April 19, 2006, which inadvertently omitted the word "special" to indicate that Petitioner's special parole term had been revoked.  *Response*, at 5 fn.3.

30 days.  Doc. No. 9.

On April 28, 2006, the Court held a hearing in which the parties stipulated, on the record, to this Court's continuing jurisdiction in this action.  *See also Cohen v. U.S.*, 593 F.2d 766, 767 fn.2 (6th Cir. 1979) (transfer of prisoner did not divest court of subject matter jurisdiction in *habeas* matter).  On that same day, the Court issued an *Order* directing the clerk to substitute Warden Robert Tapia, the warden of the Youngstown facility, as the Respondent in this action in accordance with 28 U.S.C. § 2243.  Doc. No. 11.

On May 5, 2006, the Court heard oral arguments on the merits of Petitioner's claims.  In that hearing the government, on the record, waived its right to challenge the *Petition* based on Petitioner's failure to exhaust the administrative remedies.  *See Urbina v Thoms*, 270 F.3d 292 (6th Cir. 2001) (the government has the ability to waive the exhaustion argument).  *See also Miller v. U.S. Dept. of Justice*, 905 F.2d 1538, 1538 (6th Cir. 1990) (Resort to administrative remedies is futile if the agency "has evidenced a strong position on the issue together with an unwillingness to reconsider.") (citing *James v. United States Dep't of Health and Human Serv.*, 824 F.2d 1132, 1139 (D.C. Cir. 1987)).  This Court will therefore proceed to consider the merits of Petitioner's claims.

## III.  ANALYSIS

Petitioner contends that the USPC has acted in excess of its statutory authority by imposing additional special parole terms after his first special parole term had been revoked.  Thus, petitioner has properly brought this action under 28 U.S.C. § 2241.  *See* 28 U.S.C. §§ 2241(c)(3) and 2254(a).  *See also Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (*per curiam*) ("Petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court.");  *Robles v. United States*, 146 F.3d 1098, 1100 (9th Cir. 1998)

6

(*habeas corpus* petition properly attacks [the USPC's] statutory authority to impose multiple special parole terms).

In the *Petition*, Petitioner argues that, (A) the USPC lacked statutory authority under the special parole statute, 21 U.S.C. § 841(c), to require him to forfeit time spent on special parole; (B) the USPC lost jurisdiction over him before the issuance of the March 29, 2004, warrant pursuant to the good-time credit statute, 18 U.S.C. § 4164; and (C) his incarceration is illegal because he was not granted a parole revocation hearing for six and one-half months after his most recent arrest.

### A.       Special Parole, 21 U.S.C. § 841(c)

Under the government's interpretation of the relevant version of 21 U.S.C. § 841(c), the entire term of special parole can be reimposed each time a special parolee violates the terms of special parole.  Under Petitioner's interpretation of § 841(c), an additional special parole term cannot be imposed after the first special parole term is revoked.  Based on the binding precedent in this circuit, *Dolfi v. Pontesso*, 156 F.3d 696, 696 (6th Cir. 1998), the Court agrees with Petitioner on this point.

#### 1.       *Statutory Framework*

Without recounting the entire tortured history of special parole, conviction on certain narcotics offenses committed between 1984 and November, 1987, required the imposition of a

special parole term.[5]  *Gozlon v. United States*, 498 U.S. 395, 399-400 (1991).  A person convicted of violating special parole could be reincarcerated by the USPC for all or part of the "original special parole term" without allowing credit for his so-called "street time" spent on special parole prior to his reincarceration.  *Dolfi*, 156 F.3d at 696.  The former version of § 841(c) prescribed the consequences of revocation of a "special parole term" in the following language:

> A special parole term . . . may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole.  A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.  A special parole term provided for in this section . . . shall be in addition to, and not in lieu of, any other parole provided for by law.

*Dolfi*, 156 F.3d at 696-697.  Thus, a person serving a five year special parole term who, like Petitioner, commits a parole violation well into his fourth year on special parole can be returned to prison for an additional five years, notwithstanding the time he spent on parole.  *Id.* at 697.

Special parole differs from regular parole in three respects:

> First, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the [USPC]; third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision,

---

[5]The Sentencing Reform Act of 1984, 18 U.S.C. 3551 *et seq.*, replaced special parole with "supervised release," a similar institution but administered by the judicial branch.  *Gozlon*, 498 U.S. at 400 (1991).  The "old Parole Commission," however, "remains in existence to control the release of prisoners sentenced prior to the effectiveness of the Sentencing Guidelines instituted by the Sentencing Reform Act."  *Dolfi*, 156 F.3d at 697.  The old Commission (the USPC) "still monitors the parole of this shrinking class of federal prisoners and deals with any parole violations these parolees may commit."  *Id.*

or "street time."

*Urbina v. Thomas*, *supra*, 270 F.3d at 295-96 (citing *Evans v. United States Parole Comm'n*, 78 F.3d 262, 263 (7th Cir. 1996)).

At issue in this case is whether or not the terms of special parole may be reimposed following re-release after revocation of special parole. As the government correctly notes, this issue has been the subject of extensive litigation.[6] The USPC's long-standing interpretation of the statute, reflected in 28 C.F.R. § 2.57(c), is that the terms of special parole may be reimposed under such circumstances. However, the United States Court of Appeals for the Sixth Circuit rejected that position in 1998 in *Dolfi*, joining the "Second, Third, Fourth, Fifth, Seventh, Ninth, and Tenth Circuits." *Dolfi*, 156 F.3d at 698. To hold otherwise, the court reasoned, "can subject an offender to an interminable cycle of governmental supervision through successive terms of special parole if the parolee continues to violate the terms of his release." *Id.* *See also Evans*, 78 F.3d at 265 (in concluding as unacceptable this type of interminable cycle of government supervision, the court opined: "When parole supervision ends, incorrigible offenders may be prosecuted and convicted for their new crimes."). In these jurisdictions, then, a drug offender whose special parole term has

_____

[6]The following circuits have held that the relevant statute does not authorize the reimposition of special parole by the USPC after the original special parole is revoked: *Manso v. Federal Detention Ctr.*, 182 F.3d 814 (11th Cir. 1999); *Whitney v. Booker*, 147 F.3d 1280 (10th Cir. 1998); *Robles v. United States*, 146 F.3d 1098 (9th Cir. 1998); *United States v. Robinson*, 103 F.3d 610 (4th Cir. 1997); *Campos v. United States Parole Comm'n*, 120 F.3d 49 (5th Cir. 1997); *Evans v. United States*, 78 F.3d 262 (7th Cir. 1996); *Fowler v. United States Parole Comm'n*, 94 F.3d 835 (3rd Cir. 1996); *Artuso v. Hall*, 74 F.3d 67 (5th Cir. 1996);

The Eighth and District of Columbia Circuits have reached the opposite conclusion. *Billis v. United States*, 83 F.3d 209, 211 (8th Cir. 1996) (*per curiam*); *United States Parole Comm'n v. Williams*, 311 U.S. App. D.C. 416, 54 F.3d 820, 824 (D.C. Cir. 1995).

been revoked may thereafter be placed only on traditional parole.  *Id.*

   *2. Discussion*

  Petitioner takes the position before this Court that *Dolfi* requires his immediate release from prison.  This position is based, at least in part, however, on a mischaracterization of the facts of this case.

  Without question, a term of special parole runs consecutively to the term of imprisonment. Petitioner does not dispute this proposition.  *See Petition*, ¶ 2.

  Petitioner was first released to non-custodial supervision October 27, 1993, after serving 1885 days of his original nine year prison sentence.  *Exhibit B*.  Thus, Petitioner still had 1340 days remaining of his nine year sentence that had to be served before the special parole term began.  *Id.* Petitioner, however, violated his release to non-custodial supervision after completing 716 days of the 1340 remaining of his nine year sentence when he was convicted of two counts of trafficking in drugs.  *Exhibit A*, at 3.  The 716 days spent on non-custodial supervision was forfeited under 18 U.S.C. § 4210(b)(2), which Petitioner has not placed in issue in this action.  *Exhibit C*.

  Accordingly, Petitioner was required to complete the 1340 days remaining of his original nine year sentence, which was correctly calculated to be June 13, 1999, and then to complete his five-year term of special parole, which would start on June 14, 1999 and end on June 13, 2004. *Exhibit A*, at 4.

  On December 24, 1996, Petitioner was again released to non-custodial supervision and this time successfully completed his nine year sentence on June 13, 1999.  *Exhibit D*.  Petitioner then began his five year term of special parole which was to expire on June 13, 2004.  *Exhibit E*. Petitioner, however, used drugs and thereby violated his special parole on April 14, 2004, just two

months prior to its expiration.  *Exhibits F, G*.  Consequently, Petitioner forfeited the 1766 days he had spent on special parole under § 841(c).  *Exhibit I.*  The Bureau of Prisons correctly recalculated his release from special parole as April 13, 2009.  *Exhibit A*, at 2.  Petitioner does not dispute this conclusion, nor is there any basis in the law to do so.

Petitioner was again released to special parole on October 14, 2004.  *Exhibit J*.  A warrant was executed for his violation of parole on September 20, 2005.  *Exhibit M*.  At that time, Petitioner had served 524 days of his parole.  Thus, the justiciable controversy before this Court is whether Petitioner was released to special parole or traditional parole on October 14, 2004.

Under the government's interpretation of § 841(c), Petitioner was released on October 14, 2004, for a second time to special parole.  Thus, when the September 20, 2005, warrant was executed, § 841(c) requires that Petitioner forfeit the 524 days he had spent on parole, which would make that the expiration of Petitioner's special parole term September 20, 2010, *i.e.*, the date the warrant for violation of parole was executed, September 20, 2005, plus the entire five year special parole term.  In addition, when Petitioner is rereleased, presumptively on March 20, 2007, that release will again be to a term of special parole.

Under the Sixth Circuit's and Petitioner's interpretation of § 841(c), Petitioner would have been on traditional parole when the September 20, 2005, warrant was executed and, consequently, the USPC does not have the authority to require him to forfeit the 524 days he had completed since his October 14, 2004, release.  *See Dolfi*, 156 F.3d 696.  Thus, the expiration of Petitioner's sentence would be April 13, 2009, *i.e.*, the date calculated at the first revocation of his special parole.  *Bureau of Prisons Sentence Monitoring Computation*, at 2.

The Court initially notes that the United States Court of Appeals for the Sixth Circuit has

11

long adhered to the "venerable principle" that a prior published decision remains controlling unless overturned by an inconsistent decision of the United States Supreme Court or by the circuit court itself sitting *en banc*.  *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996); 6 Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court *en banc* consideration is required to overrule a published opinion of this court.").  Since the Sixth Circuit has not given *en banc* consideration to *Dolfi*, this Court is bound to apply its clear holding to the facts of this case unless it has been overturned by an inconsistent decision of the Supreme Court, which is exactly what the government argues.

        a.      *Johnson v. Untied States*, 529 U.S. 694 (2000)

The government contends that *Dolfi* was implicitly overruled by *Johnson v. United States*, 529 U.S. 694 (2000), which interpreted the supervised release statute, 18 U.S.C. § 3583. The supervised release statute, like the special parole statute, contains a revocation provision, and allows the district court to:

    (1) terminate a term of supervised release . . .

    (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and . . . modify, reduce, or enlarge the conditions of supervised release . . .

    (3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision . . . or

    (4) order the person to remain at his place of residence  . . . .

18 U.S.C. § 3583(e).

"After a significant number of circuits had interpreted this statute not to authorize a

successive term of supervised release, Congress added a new subsection [in 1994] to allow a sentencing court to reimpose supervised release after revocation." *Dolfi*, 156 F.3d at 699 fn.1; Pub. L. 103-322, § 110505, 108 Stat. 2017 (1994), codified at 18 U.S.C. § 3583(h).   Subsequently, the United States Supreme Court interpreted the supervised release statute.  *Johnson*, 529 U.S. at 694. *Johnson* held that the district court can impose successive terms of supervised release under 18 U.S.C. § 3583(e).

The government correctly argues that a central issue in *Johnson*, and in *Dolfi*, was the definition of the term "revoke."  *Response*, at 10.  In *Johnson*, the Supreme Court held that "revoke" can mean "to call or summon back," without implying that no further supervised release is possible. *Johnson*, 529 U.S. at 706.  Thus, a revoked term of supervised release survives to be served in prison and on another term of supervised release.  *Id.* at 707.  The government concludes that the "*Johnson* decision completely undercuts the rationale used by the Sixth Circuit in *Dolfi* to support its interpretation of the special parole statute."  *Response*, at 10.

The Court, however, disagrees, for although *Dolfi* certainly relied on the supervised release statute for support of its interpretation of the word revoke to mean terminate, it also clearly expressed its disagreement with the USPC's regulation interpreting § 841(c) without regard to the interpretation of the term revoke.

The *Dolfi* court spent a significant portion of its six page opinion explaining that a federal court, not the USPC, is the proper entity to interpret the criminal code.  *Dolfi*, 156 F.3d at 699-701. After its discussion of the term revoke, the *Dolfi* court rejected the government's "theory on appeal," which it concluded rested on the court following its prior statement in *United States v. Truss*, 4 F.3d 437, 441 (6th Cir. 1993), that the supervised release statute, 18 U.S.C. § 3583(e)(3) is "ambiguous"

13

and "that the language of § 841(c) is "similarly ambiguous." *Id.* at 699.  If the court would accept

the statutory language as ambiguous, the government contended that, under *Chevron, U.S.A., Inc.*

*v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984), it owed deference to the USPC's

practice of imposing successive special parole under 28 C.F.R. §§ 2.52(b) and 2.57(c)."[7] *Id.* at 699-

700.  The *Dolfi* court found this theory unavailing because:

> First of all, the regulations cited are as silent on the issue as the statute itself.  Both
> regulations merely allow the [USPC] to "reparole" an offender without specifying
> what type of parole should be used. 28 C.F.R. §§ 2.52(b) & 2.57(c).  Our
> interpretation of § 841(c) also allows the [USPC]--in the language of the
> regulations--to "reparole" an offender.  But unlike the [USPC], we believe the more
> reasonable interpretation of the statute's (and the regulations') silence is to assume
> that traditional parole should govern the release of those who do not spend their
> entire special parole term in jail.

*Id.* at 700.

Additionally, the court concluded that there is a "crucial distinction between criminal and

---

[7]Section 2.52(b) provides:

If parole is revoked pursuant to this section, the Commission shall also determine, on the
basis of the revocation hearing, whether reparole is warranted or whether the prisoner
should be continued for further review.

Section 2.57(c) provides:

Should a parolee be found to have violated conditions of release during supervision under
his regular sentence, i.e., before commencement of the Special Parole Term, he may be
returned as a violator under his regular sentence; the Special Parole Term will follow
unaffected, as in paragraph (a) of this section.  Should a parolee violate conditions of
release during the Special Parole Term he will be subject to revocation on the Special
Parole Term as provided in § 2.52, and subject to reparole or mandatory release under the
Special Parole Term.  Notwithstanding the provisions of § 2.52(c), a special parole term
violator whose parole is revoked shall receive no credit for time spent on parole pursuant
to 21 U.S.C. § 841(c).

civil statutes" and that judicial deference under *Chevron* in the face of statutory ambiguity is not normally followed in criminal cases." *Id*. (citing *Evans*, 78 F.3d at 265). The rule of lenity requires a stricter construction of ambiguity in a criminal statute, not deference. *Id.* (citing *United States v. Lanier*, 520 U.S. 259 (1997). The court noted that a similar argument had been made in *Crandon v. United States*, 494 U.S. 152 (1990), where Justice Scalia pointed out in a concurring opinion that *Chevron* does not require the judiciary to defer to executive interpretations of the criminal code, particularly when doing so would "turn the normal construction of criminal statutes upside-down, replacing the doctrine of lenity with a doctrine of severity." *Id.* at 177 (Scalia, J., concurring). The *Dolfi* court concluded that Justice Scalia's "words apply with equal force to defeat the respondents' argument [that we should adhere to the USPC's interpretation] here.[]"

The *Dolfi* court then went on to explain that:

> The special deference required by *Chevron* is based on the expertise of an administrative agency in a complex field of regulation with nuances perhaps unfamiliar to the federal courts. *See Chevron*, 467 U.S. at 842-45. Unlike environmental regulation or occupational safety, criminal law and the interpretation of criminal statutes is the bread and butter of the work of federal courts.

*Id.* at 700. *See also Evans*, 78 F.3d at 265 (7th Cir. 1996) (in declining deference to the USPC's interpretation of § 841(c): "Now we have substantial doubt that the Judicial Branch owes any deference to the Executive Branch when the question concerns the maximum term of imprisonment; certainly judges do not defer to the Attorney General's interpretation of Title 18.").

Finally, and importantly, in an unpublished opinion issued subsequent to *Johnson*, the Sixth Circuit declined to conclude that *Dolfi* had been disturbed by *Johnson*, stating:

> It appears that the conversion to special parole was improper under our decision in *Dolfi v. Pontesso*, 156 F.3d 696 (6th Cir. 1998), in which we noted that the consequences of revoking special parole were described in 21 U.S.C. § 841(c), that the statute was silent on whether the [USPC] had such authority, and that the

15

majority of circuits had held that it did not. We held that:

> The statute's use of the word revoke is the linchpin of these decisions. [These cases] have all held that once an offender's original term of special parole is revoked,' the special parole term disappears and is replaced by a term of imprisonment that can only be cut short under traditional parole . . .

*Id.* at 698-99.

Moreover, we conclude, contrary to the government's insistence, that the ruling in *Dolfi* has not been disturbed by the Supreme Court's subsequent decision in *Johnson v. United States*, 529 U.S. 694 (2000), because the latter case concerned a court's authority to reimpose supervised release following re-incarceration, not the conversion of regular parole to special parole.

*Gillmore v. United States Parole Comm'n*, 124 Fed. Appx. 941, 942-43 (6th Cir. 2005) (emphasis added) ("Nevertheless, it appears that the plaintiff's period of parole ended . . . and that he is no longer subject to the control of the [USPC]" which causes us to "find that the question raised by the *habeas* petition has been rendered moot[.]")

While *Gillmore* does not carry the weight of precedent, this Court declines to rule in contradiction to it. *See* Danny J. Boggs & Brian P. Brooks, *Unpublished Opinions & the Nature of Precedent*, 4 Green Bag 2d 17, 26 (Fall 2000) ("While different circuits have different local rules governing the citation of unpublished opinions, it is important for judges and lawyers alike to recognize that departures from the common-law principle that every decision is a precedent should be undertaken carefully and in limited circumstances.").

> b.    Notable differences between the special parole statute and the supervised release statute.

§ 841(c) refers to a parolee's "original term" of imprisonment, whereas 18 U.S.C. § 3583 does not.  This Court finds the Seventh Circuit's interpretation of this statute persuasive:

Section § 841(c) said that "the underline original term of imprisonment shall be increased by

16

the period of the special parole term" (emphasis added).  An "original" term can be augmented only once; after that, it is not original. What is more, § 841(c) spoke of revoking a "special parole term imposed under this section"--that is, by a judge as part of the sentence--rather than revoking a special parole term created by operation of regulation after release from a prior revocation. The Parole Commission cannot "impose" a term of special parole any more than it can "sentence" a defendant to prison.

*Evans*, 78 F.3d at 265.

Additionally, the Supreme Court in *Johnson* explained extensively why it did not assign the "conventional understanding of the term revoke," *i.e.*, "to annul," to the term revoke used in the supervised release statute.  529 U.S. at 704-09.  The *Johnson* court concluded that there are reasons "to think that the option of further supervised release was intended." *Id.* at 704.  Those reasons included textual reasons related to the comparison of 18 U.S.C. § 3583(e)(1) which provides that a judge may "terminate a term of supervised release" and 18 U.S.C. § 3583(e)(3) which provides that a judge may "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision[.]" *Id.*;  18 U.S.C. § 3583.

[18 U.S.C. § 3583(e)(1)] is an unequivocal provision for ending the term of supervised release without the possibility of its reimposition or continuation at a later time.  Congress wrote that when a court finds that a defendant's conduct and the interests of justice warrant it, the court may "<u>terminate</u> a term of supervised release and discharge the person released," once at least a year of release time has been served.

If application of subsection (3) had likewise been meant to conclude any possibility of supervised release later, it would have been natural for Congress to write in like terms.  It could have provided that upon finding a defendant in violation of the release conditions the Court could "terminate a term of supervised release" and order the defendant incarcerated for a term as long as the original supervised release term.  But that is not what Congress did.  <u>Instead of using "terminate" with the sense of finality just illustrated in subsection (1), Congress used the verb "revoke"</u> and so at the least left the door open to a reading of subsection (3) that would not preclude further supervised release after the initial revocation.  In fact, the phrasing of

17

subsection (3) did more than just leave the door open to the non-preclusive reading.

*Johnson*, 529 U.S. at 704-05 (emphasis added).  Unlike the supervised release statute, § 840(c) only

uses the term revoke.  So the above reasoning is simply inapplicable to the special parole statute.

<u>c.</u>    Conclusion 21 U.S.C § 841(c)

In summary, although some of the Sixth Circuit's reasoning in *Dolfi* is undercut by *Johnson*,

some of the reasoning was not affected at all.  Additionally, much of *Johnson's* interpretation of the

text of 18 U.S.C. § 3583(e)(1) is inapplicable to § 841(c).  It is simply not clear to this Court that

*Johnson's* interpretation of the supervised release statute implicitly overruled *Dolfi's* interpretation

of the special parole statute.[8]  This Court declines to reach conclusions regarding how the Sixth

Circuit will interpret *Johnson*, particularly in light of the *Gillmore* panel's unequivocal statement

that *Johnson* did not disturb the precedent set forth in *Dolfi*.  Accordingly, the Court concludes that

the holding in *Dolfi* is express and unambiguous and governs its analysis here.

**B.    Good-time Credits**

Petitioner also contends that, by virtue of former 18 U.S.C. § 4164, the USPC lost

jurisdiction over him before the issuance of the March 29, 2004, warrant.  *Petition*, ¶ 5.  Section

4164 provides in pertinent part:

> A prisoner having served his term or terms less good-time deductions shall, upon
> release, be deemed as if released on parole until the expiration of the maximum term

---

[8]The only circuit court that has reconsidered its previous decision related to its
interpretation of § 841(c) in light of *Johnson* is the Second Circuit, wherein the circuit court
itself chose to recognize an implicit overruling.  *Strong v. United States Parole Comm'n*, 141
F.3d 429 (2d Cir. 1998), *overruled by Rich v. Maranville*, 369 F.3d 83 (2d Cir. 2004), *cert.
denied*, *Rich v. Hatin*, 543 U.S. 913 (2004);.

or terms for which he was sentenced less one hundred and eighty days.

18 U.S.C. § 4164(b)(1) (repealed effective November 1, 1986); *Tippitt v. United States Board of Parole*, 446 F.2d 26, 27 (6th Cir. 1971) (prisoner is subject to supervision for the period of time that he did not serve in prison because of good behavior credit, less 180 days).

Petitioner had been released to non-custodial supervision on December 24, 1996, and then, released directly from non-custodial supervision to special parole on June 14, 1999. *See Exhibits A, D, E*. Hence, the government argues that Petitioner was not released pursuant to the good-time credit statute, and, therefore, the statute is inapplicable. This Court agrees.

The good-time credit statute applies to a prisoner who is released on his calculated statutory good-time release date. *See Holmes v. Bureau of Prisons*, 1994 U.S. App. LEXIS 6603, *3 (6th Cir. March 28, 1994) ("According to the April 27, 1990, Sentencing Monitoring Computation Data Sheet submitted with [the petitioner's] petition, his statutory good time release date would have been May 5, 1991. Since [petitioner] was released on April 27, 1990, it is clear that he was" not released pursuant to the good-time credit statute and the statute is, therefore, inapplicable.). In this action, according to the *Bureau of Prisons Sentence Monitoring Computation Data* sheet, the expiration of Petitioner's original nine year prison term was June 13, 1999, making the "180 day date" December 15, 1998. *Exhibit A*, at 4. Since Petitioner was released on December 24, 1996, to non-custodial supervision and then released directly to special parole on June 14, 1999, it is clear that he was not released under 18 U.S.C. § 4164. *See Holmes*, 1994 U.S. App. LEXIS at *3.

Accordingly, the USPC possessed statutory authority to issue the March 29, 2004, warrant charging Petitioner with parole violations.

### C.    Parole Revocation Hearing

19

Petitioner contends that he was illegally held without a revocation hearing from September 20, 2005, through April, 4, 2006, despite the fact that he had requested a local revocation hearing with witnesses pursuant to 28 C.F.R. § 2.49(f).  *Petition*, ¶ 7.  Thus, Petitioner argues that he is entitled to immediate release from incarceration for this violation.  Petitioner's argument is not well-taken.  *Id.* at 3.

18 § 4214(a)(1)(B)[9] requires a hearing, where there are contested parole violation charges, within 60 days of the determination of probable cause–not within 60 days of reincarceration.  The USPC found probable cause to believe that Petitioner violated the conditions of his release on December 9, 2005.  *Exhibit O*.  The statutory deadline for the revocation hearing was February 8, 2006.  The revocation hearing was held on April 4, 2006.  *Exhibit S*.  Thus, there was a delay in the hearing of approximately two months.

However, the regulation on which Petitioner relies, 28 C.F.R. § 2.49(f), itself provides for extension of this time limit if the delay between the probable cause determination and the revocation hearing was attributable to the parolee.

> A local revocation hearing shall be scheduled to be held within sixty days of the probable cause determination.  Institutional revocation hearings shall be scheduled to be held within ninety days of the date of the execution of the violator warrant upon which the parolee was retaken.  However, if a parolee requests and receives any

---

[9]18 § 4214(a)(1)(B) provides:

(a)(1) Except as provided in subsections (b) and (c), any alleged parole violator summoned or retaken under section 4213 shall be accorded the opportunity to have–
. . . .
(B) upon a finding of probable cause under subparagraph (1)(A), a revocation hearing at or reasonably near the place of the alleged parole violation or arrest within sixty days of such determination of probable cause except that a revocation hearing may be held at the same time and place set for the preliminary hearing.

postponement or consents to a postponed revocation proceeding, or if a parolee by his actions otherwise precludes the prompt conduct of such proceedings, the above-stated time limits may be extended.  A local revocation hearing may be conducted by a hearing examiner, hearing examiner panel, or other official designated by the Regional Commissioner.

28 C.F.R. § 2.49(f).

A review of the undisputed facts in this case unequivocally shows that the delay in the hearing was attributable to Petitioner. *Exhibits P, R*.  As set forth in detail *supra*, the USPC scheduled Petitioner's revocation hearing for January 13, 2006, within the statutory time period, but was required to reschedule after it was unsuccessful in contacting Petitioner's attorney concerning the hearing and after it was informed that Petitioner had retained a new attorney. *Exhibit P*.

Based on these facts, the Court concludes that there was no improper delay in holding Petitioner's revocation hearing and that his confinement during that period of time was not illegal.[10] The approximate two month delay between the probable cause determination and the revocation hearing was attributable to Petitioner.

## V. CONCLUSION

Based on the foregoing, Petitioner Daniel Blazevich's Petition for Writ of *Habeas Corpus* is **CONDITIONALLY GRANTED**.  Doc. No. 2.  Petitioner was released to traditional parole on October 14, 2004.  When that traditional parole was revoked on September 20, 2005, Petitioner's time on parole was not forfeited; the ending of his term of imprisonment did not change from April 13, 2009.  When Petitioner is paroled from his current incarceration, it is **ORDERED** that he be

---

[10]In any event, as the government correctly notes, a delay of a revocation hearing does not entitle a parolee to release from prison. *See Northington v. United States Parole Comm'n*, 587 F.2d 2, 3 (6th Cir. 1978) (the parolee may seek a court's assistance to compel a hearing, but he is not entitled to a writ of habeas corpus releasing him from custody).

released to traditional parole.

It is so **ORDERED**.


s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: June 2, 2006.